## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF NEW YORK

PFIZER INC.,                                      )
PHARMACIA & UPJOHN COMPANY, and                   )
PFIZER HEALTH AB,                                 )
                                                  )
                         Plaintiffs,              )    CIVIL ACTION No: 07-CV-11198
                                                  )    (LTS) (KNF)
            v.                                    )
                                                  )
TEVA PHARMACEUTICALS USA, INC.,                   )
                                                  )
                         Defendant.               )
                                                  )

## AFFIDAVIT OF DON M. KENNEDY IN SUPPORT OF
## TEVA PHARMACEUTICALS USA, INC.'S MOTION TO TRANSFER

I, Don M. Kennedy, state under oath as follows:

1.      I am a partner in the firm of Goodwin Procter LLP ("Goodwin Procter"), which is counsel for Teva Pharmaceuticals USA, Inc ("Teva") in this action. I am an attorney admitted to practice law in the Commonwealth of Massachusetts and am resident in Goodwin Procter's Boston office located at Exchange Place, 53 State Street, Boston, MA 02109. I am personally familiar with the matters set forth in this Affidavit.

2.      In this action, plaintiffs Pfizer Inc., Pharmacia & UpJohn Company LLC, and Pfizer Health AB (collectively, "Pfizer") allege that Teva's manufacture, use, sale or offer for sale of tolterodine tartrate extended release capsules 2 and 4 mg ("tolterodine ER capsules") would infringe United States Patent No. 5,382,600 ("'600 patent") and two other patents.

3.      Before it commenced this present action, Pfizer instituted two prior lawsuits against Teva and its subsidiary, IVAX Pharmaceuticals, Inc., in the United States District Court for the District of New Jersey regarding the '600 Patent: *Pfizer, Inc. v. Teva Pharmaceuticals*

*USA, Inc.,* No. 04-1418 DMC (D.N.J. 2004) and *Pfizer, Inc. v. IVAX Pharmaceuticals, Inc.,* No.

07-CV-0174 DMC (D.N.J. 2007). I have been one of the primary attorneys for Teva and IVAX

in the two prior actions, and I have personal knowledge of the proceedings in the prior lawsuits.

4.      The '600 patent is directed to a class of chemical compounds and compositions

thereof, including tolterodine tartrate, which is the active ingredient in Pfizer's product Detrol

LA® and Teva's tolterodine ER capsules.

5.      In March 2004, Pfizer filed its complaint in *Pfizer, Inc. v. Teva Pharmaceuticals*

*USA, Inc.,* No. 04-1418 DMC (D.N.J. 2004) ("First Action"), alleging that Teva's commercial

manufacture, use or sale of tolterodine tartrate tablets, 1 and 2 mg ("tolterodine IR tablets")

would infringe the '600 patent. Attached as Exhibit 1 is a true and accurate copy of the First

Amended Complaint filed by Pfizer in the First Action (Exhibit A omitted because it is also

Exhibit A to the present Complaint).

6.      Teva's Answer and Counterclaims in the First Action sought a declaratory

judgment that the '600 patent was invalid for obviousness and unenforceable because of

inequitable conduct by the inventors and their attorneys during the prosecution of the '600

patent.

7.      In January 2006, Teva acquired IVAX Pharmaceuticals, Inc. ("IVAX"), which

became an indirect, wholly-owned subsidiary of Teva. Subsequent to this acquisition, Teva

decided to forego further development of its tolterodine IR tablets tablet in favor of IVAX's

formulation of tolterodine IR tablets and to withdraw Teva's ANDA.

8.      On December 28, 2006, the U.S. Food & Drug Administration acknowledged

withdrawal of Teva's ANDA No. 76-966, concerning tolterodine tartrate 1 and 2 mg tablets.

2

9.      On January 10, 2007, IVAX amended its ANDA No. 77-006, concerning tolterodine tartrate 1 and 2 mg tablets, to assert a Paragraph IV Certification that the '600 patent was invalid and/or unenforceable.  On the same date, IVAX provided notice of its amended patent certification to Pfizer.

10.      On January 11, 2007, Pfizer filed its complaint in *Pfizer, Inc. v. IVAX Pharmaceuticals, Inc.,* No. 07-CV-0174 DMC (D.N.J. 2007) ("Second Action"), alleging that IVAX's commercial manufacture, use or sale of tolterodine tartrate tablets, 1 and 2 mg ("tolterodine IR tablets") would infringe the '600 patent.  Attached as Exhibit 2 is a true and accurate copy of the Complaint filed by Pfizer in the Second Action (Exhibit A omitted).

11.      IVAX filed an Answer and Counterclaims in the Second Action raising the same affirmative defenses and counterclaims asserted by Teva in the First Action.  Teva joined the Second Action as a counterclaim-plaintiff, and Pfizer named Teva as a defendant as well.

12.      In March 2007, the parties agreed to dismiss the First Action, and entered into a Pretrial Scheduling Order, signed by Magistrate Falk on March 29, 2007, that provided that all fact and expert discovery taken in the First Action would be treated as if it were taken in the Second Action, and that the parties would not duplicate discovery from the First Action. Attached as Exhibit 3 is a true and accurate copy of the Pre-Trial Scheduling Order of the District of New Jersey in the Second Action.

13.      In the First and Second actions, the parties have actively litigated the validity and enforceability of the '600 patent in the District of New Jersey for nearly four years.  Discovery has included the production of several hundred thousand pages of documents; 18 depositions, including depositions of inventors, prosecuting attorneys and others, of which four depositions

took place in Sweden where a number of non-party inventors and witnesses reside; and the submission of reports from and the depositions of eight expert witnesses.

14.     In addition, the parties have briefed and the District of New Jersey has considered numerous important disputes concerning the scope of discovery concerning the validity and enforceability of the '600 patent, including discovery regarding secondary considerations of non-obviousness of the compounds claimed in the '600 patent.  Magistrate Judge Falk has considered approximately 25 letters and letter briefs from the parties, primarily relating to discovery disputes and case management issues, and has heard and considered numerous other issues in the 15 status conferences, telephone conferences, and hearings that he has held.  In addition, the parties have filed motions with Judge Cavanaugh—a motion to consolidate the two cases and two separate motions to dismiss—although those motions were ultimately withdrawn.

15.     Although the First and Second Actions concern the IR form of tolterodine, Pfizer also sought and the District of New Jersey permitted Pfizer to take certain discovery in the Second Action related to Detrol LA® and Teva's tolterodine ER capsules.

16.     Discovery in the Second Action is nearly complete, and motions for summary judgment are due on March 7, 2008.

17.     Attached as Exhibit 4 is a true and accurate copy of *ImagePoint Inc. v. Keyser Indus., Inc.,* No. 3:04-CV-119, 2005 WL 1242067 (E.D. Tenn. May 25, 2005).

18.     Attached as Exhibit 5 is a true and accurate copy of *Aventis Pharma S.A. v. Sandoz Inc.,* No. 06-3671(MLC), 2007 WL 1101228 (D.N.J. April 10, 2007).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 16th DAY OF JANUARY, 2008.

_____
Don M. Kennedy

# EXHIBIT 1

David E. De Lorenzi [DED-2692]
Sheila F. McShane [SFM-6051]
GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4743

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PFIZER INC.,<br>PHARMACIA & UPJOHN COMPANY, and<br>PFIZER HEALTH AB,<br><br>Plaintiffs,<br><br>v.<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>Defendant. | **<u>FIRST AMENDED COMPLAINT</u>**<br>**Civil No.: 04-1418 (DMC)** |

Plaintiffs Pfizer Inc., Pharmacia & Upjohn Company, and Pfizer Health AB

(collectively, "Pfizer"), by its attorneys White & Case LLP and Gibbons, Del Deo, Dolan

Griffinger & Vecchione, for their Complaint against Defendant Teva Pharmaceuticals USA, Inc.,

herein allege:

**THE PARTIES**

1.      Plaintiff Pfizer Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 235 East 42nd Street, New York, New York.

2.      Plaintiff Pharmacia & Upjohn Company is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 7000 Portage Road, Kalamazoo, Michigan.  Pfizer Inc. is the ultimate parent of Pharmacia & Upjohn Company.

3.      Pfizer Health AB is a company organized and existing under the laws of Sweden, having a place of business at Lindhagensgatan 100 SE-112 87, Stockholm, Sweden. Pfizer Inc. is the ultimate parent of Pfizer Health AB.

4.      Upon information and belief, Teva Pharmaceuticals USA, Inc. ("Teva") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania.

**JURISDICTION AND VENUE**

5.      This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.      Upon information and belief, Teva is in the business of making and selling generic drug products.

7.      Upon information and belief, Teva sells and contracts to sell generic drug products in the United States, including the State of New Jersey.

8.      Upon information and belief, Teva has submitted to the jurisdiction of the United States District Court for the District of New Jersey.

9.   Defendant Teva is subject to personal jurisdiction in this judicial district.

10.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).

### The '600 Patent

11.   On January 17, 1995, the United States Patent and Trademark Office issued United States Patent No. 5,382,600 (the "'600 patent"), entitled "3,3-Diphenylpropylamines and Pharmaceutical Compositions Thereof." At that time, the '600 patent was assigned to Pharmacia AB, the former name for Pfizer Health AB. Pfizer currently holds title to the '600 patent. A copy of the '600 patent is attached hereto as Exhibit A.

12.   The '600 patent is directed to and claims, inter alia, 3,3 diphenylpropylamino derivatives and pharmaceutical derivatives thereof, including tolterodine tartrate.

### Detrol®

13.   Pfizer holds an approved New Drug Application ("NDA") for tolterodine tartrate tablets, in 1 and 2 mg dosages, which it sells under the trade name Detrol® (the "Detrol NDA").

14.   Pursuant to 21 U.S.C. § 355(b)(1) and attendant United States Food and Drug Administration ("FDA") regulations, the '600 patent is listed in the FDA publication, "Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book"), with respect to Detrol®.

### Teva's ANDA

15.   Upon information and belief, Teva submitted Abbreviated New Drug Application No. 76-966 to the FDA pursuant to 21 U.S.C. §§ 355(j) (the "Teva ANDA"),

seeking approval to market tolterodine tartrate tablets. in 1 and 2 mg dosages (the "Teva Product").

16.    Upon information and belief, the Teva ANDA refers to and relies upon the Detrol NDA and purports to contain data showing bioequivalence of the Teva Product with Detrol®.

17.    On or about February 23, 2004, Pfizer received from Teva a letter and attached memorandum, dated February 18, 2003 (collectively, the "Teva Notification"), stating that Teva had filed the Teva ANDA, seeking approval to market the Teva Product prior to the expiration of the '600 patent.

18.    By the Teva Notification, Teva states that, pursuant to 21 U.S.C.  §  355(j)(2)(A)(vii)(IV), the Teva ANDA certifies that the '600 patent is invalid or will not be infringed by the manufacture, use, or sale of the Teva Product (the "Paragraph IV Certification").

## COUNT FOR INFRINGEMENT OF U.S. PATENT NO. 5,382,600

19.    Pfizer hereby realleges and incorporates by reference the allegations of paragraphs 1-18 of this Complaint.

20.    Teva has infringed the '600 patent, pursuant to 35 U.S.C. § 271(e)(2)(A), by submitting to the FDA ANDA No. 76-966, which includes the Paragraph IV Certification as to the '600 patent and which seeks approval from the FDA to engage in the commercial manufacture, use, or sale of the Teva Product prior to the expiration of the '600 patent.

21.    Upon information and belief, Teva has knowingly and willfully infringed the '600 patent.

22.    Pfizer will be irreparably harmed if Teva is not enjoined from infringing the '600 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pfizer Inc., Pharmacia & Upjohn Company, and Pfizer Health AB pray for a judgment in their favor and against Defendant Teva Pharmaceuticals USA, Inc., as follows:

A.    Entering judgment for Plaintiffs on their Count for Infringement of U.S. Patent No. 5,382,600.

B.    Entering preliminary and permanent judgment enjoining Defendant from making, using, selling, offering to sell, or importing the Teva Product described in ANDA No. 76-966 until after the expiration of the '600 patent.

C.    Determining that this is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiffs their reasonable attorneys' fees, costs, and expenses.

D.    Awarding Plaintiffs such other relief as the Court deems just and proper.

Dated: March 26, 2004
      Newark, New Jersey

                        Respectfully submitted,

                        **GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
Phone: (973) 596-4743
Facsimile: (973) 639-2335

By: _David E. De Lorenzi_
David E. De Lorenzi (DED-2692)
Sheila F. McShane (SFM-6051)

                        and

-5-

WHITE & CASE LLP

Dimitrios T. Drivas
Jeffrey J. Oelke
Adam Gahtan
James S. Trainor, Jr.
1155 Avenue of the Americas
New York, New York 10036
Phone:  (212) 819-8200
Facsimile:  (212) 354-8113

*Attorneys for Plaintiffs Pfizer Inc.
Pharmacia & Upjohn Company, and Pfizer
Health AB*

# EXHIBIT 2

**David E. De Lorenzi [DED-2692]**
**Sheila F. McShane [SFM-6051]**
**GIBBONS, DEL DEO, DOLAN,**
**GRIFFINGER & VECCHIONE**
A Professional Corporation
One Riverfront Plaza
Newark, New Jersey 07102
(973) 596-4743

Dimitrios T. Drivas
Jeffrey J. Oelke
Adam Gahtan
James S. Trainor, Jr.
**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
(212) 819-8200

Attorneys for Plaintiffs *Pfizer Inc., Pharmacia*
*& Upjohn Company, and*
*Pfizer Health AB*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PFIZER INC.,<br>PHARMACIA & UPJOHN COMPANY, and<br>PFIZER HEALTH AB,<br><br>Plaintiffs,<br><br>v.<br><br>IVAX PHARMACEUTICALS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT** |

Plaintiffs Pfizer Inc., Pharmacia & Upjohn Company, and Pfizer Health AB (collectively, "Pfizer"), by its attorneys White & Case LLP and Gibbons, Del Deo, Dolan Griffinger & Vecchione, for their Complaint against Defendant IVAX Pharmaceuticals, Inc., herein allege:

### THE PARTIES

1.    Plaintiff Pfizer Inc. is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 235 East 42nd Street, New York, New York.

2.    Plaintiff Pharmacia & Upjohn Company is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 7000 Portage Road, Kalamazoo, Michigan.  Pfizer Inc. is the ultimate parent of Pharmacia & Upjohn Company.

3.    Pfizer Health AB is a company organized and existing under the laws of Sweden, having a place of business at Lindhagensgatan 100 SE-112 87, Stockholm, Sweden. Pfizer Inc. is the ultimate parent of Pfizer Health AB.

4.    Upon information and belief, IVAX Pharmaceuticals, Inc. ("IVAX") is a corporation organized and existing under the laws of the State of Florida, having its principal place of business at 4400 Biscayne Blvd., Miami, FL 33137.

### JURISDICTION AND VENUE

5.    This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    Upon information and belief, IVAX is in the business of making and selling generic drug products.

7.    Upon information and belief, IVAX sells and contracts to sell generic drug

products in the United States, including the State of New Jersey.

8.     Upon information and belief, IVAX has a place of business at Two
University Plaza, Hackensack, NJ 07601.

9.     Upon information and belief, IVAX has submitted to the jurisdiction of
the United States District Court for the District of New Jersey.

10.     Defendant IVAX is subject to personal jurisdiction in this judicial district.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and
1400(b).

### U.S. Patent No. 5,382,600

12.     On January 17, 1995, the United States Patent and Trademark Office
issued United States Patent No. 5,382,600 (the "'600 patent"), entitled "3,3-
Diphenylpropylamines and Pharmaceutical Compositions Thereof." At that time of issue, the
'600 patent was assigned to Pharmacia Aktiebolag. Pfizer Health AB currently holds title to the
'600 patent. A copy of the '600 patent is attached hereto as Exhibit A.

13.     The '600 patent is directed to and claims, inter alia, 3,3
diphenylpropylamino derivatives and pharmaceutical derivatives thereof, including tolterodine
tartrate.

### Detrol®

14.     Pfizer holds an approved New Drug Application ("NDA") for tolterodine
tartrate tablets, in 1 and 2 mg dosages, which it sells under the trade name Detrol® (the "Detrol
NDA").

15.     Pursuant to 21 U.S.C. § 355(b)(1) and attendant United States Food and
Drug Administration ("FDA") regulations, the '600 patent is listed in the FDA publication,

"Approved Drug Products with Therapeutic Equivalence Evaluations" (the "Orange Book"),

with respect to Detrol®.

## IVAX's ANDA

16.    Upon information and belief, IVAX submitted Abbreviated New Drug

Application No. 77-006 to the FDA pursuant to 21 U.S.C. §§ 355(j) (the "IVAX ANDA"),

seeking approval to market tolterodine tartrate tablets, in 1 and 2 mg dosages (the "IVAX

Product").

17.    Upon information and belief, the IVAX ANDA refers to and relies upon

the Detrol NDA and purports to contain data showing bioequivalence of the IVAX Product with

Detrol®.

18.    On or about January 10, 2007, Pfizer received from IVAX a letter and

attached memorandum, dated January 10, 2007 (collectively, the "IVAX Notification"), stating

that IVAX had amended its ANDA to include a certification, pursuant to

21 U.S.C. § 355(j)(2)(A)(vii)(IV), that the '600 patent is invalid , unenforceable, or not infringed

by the manufacture, use, or sale of the IVAX Product (the "Paragraph IV Certification"). IVAX

further stated that the amendment to its ANDA was submitted to obtain approval to engage in the

commercial manufacture, use, or sale of the IVAX Product prior to the expiration of the '600

patent.

## COUNT FOR INFRINGEMENT OF U.S. PATENT NO. 5,382,600

19.    Pfizer hereby realleges and incorporates by reference the allegations of

paragraphs 1-18 of this Complaint.

20.    IVAX has infringed the '600 patent, pursuant to 35 U.S.C. § 271(e)(2)(A),

by amending its ANDA No. 77-006 to seek approval from the FDA to engage in the commercial

manufacture, use, or sale of the IVAX Product prior to the expiration of the '600 patent.

21.    Upon information and belief, IVAX has knowingly and willfully infringed the '600 patent.

22.    Pfizer will be irreparably harmed if IVAX is not enjoined from infringing the '600 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Pfizer Inc., Pharmacia & Upjohn Company, and Pfizer Health AB pray for a judgment in their favor and against Defendant IVAX Pharmaceuticals, Inc., as follows:

A.    Entering judgment for Plaintiffs on their Count for Infringement of U.S. Patent No. 5,382,600.

B.    Entering preliminary and permanent judgment enjoining Defendant from making, using, selling, offering to sell, or importing the IVAX Product described in ANDA No. 77-006 until after the expiration of the '600 patent.

C.    Determining that this is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiffs their reasonable attorneys' fees, costs, and expenses.

D.    Awarding Plaintiffs such other relief as the Court deems just and proper.

Dated: January 11, 2007
    . Newark, New Jersey

               Respectfully submitted,

               **GIBBONS, DEL DEO, DOLAN,**
               **GRIFFINGER & VECCHIONE**
               A Professional Corporation
               One Riverfront Plaza
               Newark, New Jersey 07102
               Phone: (973) 596-4743
               Facsimile: (973) 639-2335

               By:_____
               David E. De Lorenzi (DED-2692)
               Sheila F. McShane (SFM-6051)

                    and

               Dimitrios T. Drivas
               Jeffrey J. Oelke
               Adam Gahtan
               James S. Trainor, Jr.
               **WHITE & CASE LLP**
               1155 Avenue of the Americas
               New York, New York 10036
               Phone: (212) 819-8200
               Facsimile: (212) 354-8113

               *Attorneys for Plaintiffs Pfizer Inc.,*
               *Pharmacia & Upjohn Company, and*
               *Pfizer Health AB*

EXHIBIT 3

|                              |   |
|------------------------------|---|
| PFIZER, INC, PHARMACIA &     | : |
| UPJOHN COMPANY AND           | : |
| PFIZER HEALTH AB,            | : |
|                              | : |
| Plaintiff(s),                | : |
|                              | : |
| -vs-                         | : |
|                              | : |
| IVAX PHARMACEUTICALS, INC.,  | : |
|                              | : |
| Defendant(s).                | : |

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**Hon. Dennis M. Cavanaugh
Civil Action No. 07-174 (DMC)**

<u>**PRETRIAL SCHEDULING ORDER**</u>

    **THIS  MATTER** having come before the Court for a scheduling conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on March 13, 2007; and the parties having submitted a proposed joint scheduling plan; and the Court having considered the submission; and for good cause shown:

    **IT IS on this 29ᵗʰ day of March, 2007**

    **ORDERED THAT:**

## I. DISCLOSURES

    1.    Fed. R. Civ. P. 26 (a) (1) disclosures are to be exchanged on or before **March 30, 2007.**

## II.  DISCOVERY

    2.    Discovery is to remain open through **June 1, 2007**.  No discovery is to be issued or engaged in beyond that date, except upon application and for good cause shown.

    3.    Following the entry of an appropriate order, any fact or expert discovery taken in *Pfizer, Inc. Et al. v. Teva Pharmaceuticals USA, Inc.*, Civil Action No. 04-1418 (DMC)(MF) (D.N.J.) )" Teva Action" shall be treated as if it were taken in this action.  The parties will supplement their responses to the discovery requests made in the Teva Action as if they had been

served on the parties in this action.

4.      The parties agree that discovery in this action shall not duplicate discovery already taken in the Teva Action. The parties further agree that IVAX and Teva will not seek further fact discovery from Pfizer, other than any which may arise from any discovery Pfizer takes pursuant to this paragraph.

5.      Any discovery dispute shall be brought to the Court's attention in the first instance by letter or by telephone conference call immediately after the parties' good faith attempt to resolve the dispute has failed. See L. Civ. R. 16.1(f)(1).

6.      No discovery motion or motion for sanctions for failure to provide discovery shall be made without prior leave of Court.

### III. DISCOVERY CONFIDENTIALITY ORDERS

7.      Any proposed confidentiality order agreed to by the parties must strictly comply with Fed.R.Civ.P. 26(c) and Local Civil Rule 5.3. See also Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994); Glenmede Trust Company v. Thompson, 56 F.3d 476 (3d Cir. 1995). Any such form of order must be accompanied by an affidavit or attorney certification filed electronically under the designation "affidavit/certification in support of discovery confidentiality order." The affidavit or attorney certification shall describe (a) the nature of the materials to be kept confidential, (b) the legitimate private or public interests which warrant confidentiality and (c) the clearly defined and serious injury that would result should the order not be entered. Any such order must be clearly designated **"Discovery Confidentiality Order."** See Local Civil Rule 5.3.

### IV. FUTURE CONFERENCES

8.      There shall be a status/settlement conference before the undersigned on **Tuesday, June 5, 2007** at **9:00 a.m.** at the U.S. Post Office and Courthouse, 1 Federal Square, Fourth Floor, Room 457, Newark, New Jersey. All parties with settlement authority are required to attend the conference.

9.      The Court may from time to time schedule conferences as may be required, either sua sponte or at the request of a party.

10.      Counsel should be prepared to discuss settlement at every conference with the Court. The senior attorney in charge of the case must attend all settlement conferences and client(s) with full settlement authority must either attend or be immediately available by telephone. In cases involving insurance companies and other corporate or business entities, it is expected that the executive who will make the final decision on the settlement will be the person available for the conference.

11.    Since all dates set forth herein are established with the assistance and knowledge of counsel, there will be no extensions except for good cause shown and by leave of Court, even with consent of all counsel.

12.    A copy of every pleading, document or written communication with the Court shall be served on all other parties to the action.  Any such communication which does not recite or contain a certification of such service may be disregarded by the Court.

## V.  MOTIONS

13.    Any motion to add new parties, whether by amended or third-party complaint, must be returnable not later than **NOT ANTICIPATED.**

14.    Any motion to amend pleadings must be returnable not later than **NOT ANTICIPATED**.

15.    <u>No motions are to be filed without prior written permission from this Court.</u>  All dispositive motions must first be subject to a dispositive motion pre-hearing.  These prerequisites must be met before any motions are filed and the motions will be returned if not met.  All calendar or dispositive motions, if permitted, shall comply with Local Civil Rules 7.1(b), Appendix N and 78.1.

16.    No party shall move for summary judgment prior to the close of fact and expert discovery,   All summary judgment motions are to be filed by **August 31, 2007.**

## VI.  EXPERTS

17.    All supplemental expert reports shall be delivered by **July 2, 2007**, with depositions of those experts to be taken and completed **within thirty (30) days of receipt of report**.  See Fed. R. Civ. P. 26(b) (4) (A).  Any such report is to be in the form and content as required by Fed. R. Civ. P. 26(a) (2) (B).

18.    All responding expert reports shall be delivered by **July 23, 2007,** with depositions of those experts to be taken and completed **within thirty (30) days of receipt of report**.  Any such report shall be in the form and content as described above.

19.    Any expert depositions shall be limited to the subject matter of any such supplemental and rebuttal expert reports and are to be concluded by **August 13, 2007.**

20.    No expert shall testify at trial as to any opinions or base those opinions on facts not substantially disclosed in his report.

## VII.  FINAL PRETRIAL CONFERENCE

20.    A final pretrial conference shall be conducted pursuant to Civil Rule 16(d) at **a time and date to be assigned**.

3

21.     Pursuant to paragraphs 14 and 15 of this Court's form of Final Pretrial Order, all pretrial submissions must be served upon the Court **forty-eight (48) hours** prior to the final pretrial conference.

22.     All counsel are directed to assemble at the office of plaintiff's counsel not later than ten (10) days before the pretrial conference to prepare the proposed Final Pretrial Order in the form and content required by the Court, as well as the required pretrial submissions consisting of agreed-upon jury instructions, voir dire questions, verdict sheet, trial briefs and a neutral statement of the case to be read to the jury panel, all of which must be submitted **forty-eight (48) hours** before the final pretrial conference. Plaintiff's counsel shall prepare the Pretrial Order and shall submit it to all other counsel for approval.

23.     With respect to non-jury trials, each party shall submit to the District Judge and to opposing counsel proposed Findings of Fact and Conclusions of Law, trial briefs and any hypothetical questions to be put to an expert witness on direct examination.

24.     The original of the Final Pretrial Order shall be delivered to Chambers not later than **forty-eight (48) hours** before the pretrial conference, along with all pretrial submissions and trial briefs. All counsel are responsible for the timely submission of the Pretrial Order and submissions.

25.     **FAILURE TO FOLLOW THIS ORDER WILL RESULT IN SANCTIONS PURSUANT TO Fed. R. Civ. P. 16(f) and 37.**


s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**


Original:     Clerk of the Court
cc:          Hon. Dennis M. Cavanaugh, U.S.D.J.
             All Parties
             File

4

EXHIBIT 4

Westlaw.

Not Reported in F.Supp.2d                                                                                Page 1
Not Reported in F.Supp.2d, 2005 WL 1242067 (E.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

C

ImagePoint Inc. v. Keyser Industries, Inc.
E.D.Tenn.,2005.
Only the Westlaw citation is currently available.
United States District Court,E.D. Tennessee,
Northern Division.
IMAGEPOINT INC., Plaintiff,
v.
KEYSER INDUSTRIES, INC., a/k/a Florida Plastics
International, Inc., Defendant.
KEYSER INDUSTRIES, INC., a/k/a Florida Plastics
International, Inc., Third Party Plaintiff,
v.
MARKETING DISPLAYS, INC., Third Party
Defendant.
**No. 3:04-CV-119.**

May 25, 2005.

Mark S. Graham, Geoffrey D. Kressin, Jonathan D.
Gonce, Luedeka, Neely & Graham, P.C., Knoxville,
TN, for Plaintiff.
Stephen E. Roth, Baker, Donelson, Bearman &
Caldwell, Knoxville, TN, Mark K. Suri, James D.
Ryndak, Ryndak & Suri, Chicago, IL, for Defendant.

*MEMORANDUM OPINION*
VARLAN, J.
**\*1** This patent infringement case is before the Court
on Keyser Industries, Inc.'s Motion to **Transfer** the
Action to the United States District Court for the
Eastern District of Kentucky, Covington Division
[Doc. 23]. Defendant Keyser Industries, Inc., a/k/a
Florida Plastics International, Inc. ("Florida Plastics")
requests that the Court **transfer** this case to the
United States District Court for the Eastern District
of Kentucky, Covington Division. Florida Plastics'
primary reason for requesting a **transfer** is that a
related action is currently pending in the Kentucky
court involving most of the same parties, the
**same** **patents** and similar products as the present case.
Plaintiff ImagePoint, Inc. has opposed the motion and
argues that defendant has failed to show that
Kentucky is a more convenient forum than this Court.
It is worth noting that third-party defendant
Marketing Displays, Inc. has not responded in favor
of or against the pending motion.

The Court has carefully reviewed the pending motion
and related pleadings [Docs. 24, 37, 38] in light of

controlling law and the entire record. For the reasons
set forth herein, the defendant's motion to transfer
will be GRANTED.

I. Relevant Facts

A. *Parties to the Instant Case*

ImagePoint filed this action on March 10, 2004,
alleging that Florida Plastics is infringing five patents
owned by Marketing Displays, Inc. ("MDI") and for
which ImagePoint is the exclusive licensee: United
States Patent No. 5,682,694; United States Patent No.
5,983,543; United States Patent No. 6,125,565;
United States Patent No. 6,298,589; and United
States Patent No. 6,631,576. Florida Plastics has
counterclaimed against ImagePoint and filed a
third-party complaint against MDI for declaratory
judgment that they do not infringe the five MDI
patents and that the patents are invalid. The patents at
issue relate to adjustable menu panels and menu
board systems used by fast food restaurants at
drive-through lines or at inside counters.

The main corporate office for ImagePoint is located
in Knoxville, Tennessee. Officers and other
employees of ImagePoint who will be called to
testify in the present case are located and employed at
the Knoxville office. [Doc. 37, Kressin Dec. at ¶ 3.]

Florida Plastics has sold the menu boards alleged to
infringe the patents of MDI involved in the present
action to McDonalds' restaurants throughout the
United States, including the Eastern District of
Kentucky and in Covington, Kentucky. [Doc. 23,
Keyser Dec. at ¶ 3.] The accused menu boards of
Florida Plastics include menu panels, which are the
portion of a menu display product that displays the
restaurant menu, and a housing in which the menu
panels are located. These housings are purchased by
Florida Plastics from LSI Images, Inc. ("LSI"), which
is not a party to this case. [*Id.* at ¶ 4.] Florida
Plastics has manufactured the accused menu panels at
its facilities in the Chicago, Illinois area under a
license from LSI. Additionally, LSI has agreed to
indemnify Florida Plastics with respect to the
manufacture and sale of the menu boards. [*Id.* at ¶
5.] Florida Plastics indicates that all of its witnesses
involved in the design, manufacture, and sale of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

accused menu boards reside and work in the Chicago, Illinois area. Florida Plastics has no offices, employees or distributors in the States of Tennessee. [*Id.* at ¶ 6.]

*2 LSI manufactures all of its products, including the housings sold to Florida Plastics and the adjustable menu boards accused to infringe the MDI patents at its facility in Erlanger, Kentucky, which is approximately 10 miles from the United States Courthouse in Covington, Kentucky. [Doc. 23, Jordan Dec. at ¶ 4.] LSI indicates that all of its witnesses that are involved in the design, manufacture and sale of these products reside in the Erlanger, Kentucky area and work at LSI's facility in Erlanger. [*Id.* at ¶ 5.] LSI indicates that ImagePoint manufactures its menu boards at its manufacturing facility in Florence, Kentucky, which is less than 15 miles from the United States Courthouse in Covington, Kentucky. [*Id.* at ¶ 6.]

### B. *The Kentucky Case*

On October 12, 2000, LSI filed a similar action in the United States District Court for the Eastern District of Kentucky, Covington Division, Case No. 2:00-cv-00197-WOB, against ImagePoint and MDI, seeking a declaratory judgment that the first three of the five MDI patents are invalid and are not infringed by LSI. [Doc. 23, Remaklus Dec., Exs. 1, 3.] Florida Plastics is not a party to the Kentucky case but is a licensee of LSI, as noted above. As alleged by LSI in the Kentucky case, Plasti-Line, Inc., now known as ImagePoint, notified Florida Plastics that the menu boards it manufactures infringe at least two of the MDI patents. [Remaklus Dec., Ex. 1 at ¶ 12.] LSI thus agreed to indemnify Florida Plastics and its customer, McDonalds Corporation. [Remaklus Dec., Ex. 4 at ¶ 21.] ImagePoint filed a counterclaim in the Kentucky case against LSI and the case was stayed pending completion of reexamination proceedings in the United States Patent and Trademark Office regarding the three MDI patents at issue in that case. [Remaklus Dec., Ex. 7.] Counsel for ImagePoint have indicated an intent to add the remaining two MDI patents to the Kentucky case once the stay is lifted. [Remaklus Dec., Ex. 9.]

The attorneys representing LSI Industries in the Kentucky case also represent Florida Plastics in the instant case. [Kressin Dec. at ¶ 5.] Counsel for Florida Plastics and LSI indicates that no substantive discovery has yet occurred in the Kentucky case. Although the stay was lifted by the court in an order

entered November 22, 2004, the parties have yet to engage in discovery. In a letter dated February 10, 2005, counsel for ImagePoint proposed that the parties "suspend the responses to the outstanding discovery requests while the possibility of settlement is still being explored."[Doc. 38, Second Remaklus Dec. at ¶ 3.]

Counsel for ImagePoint contends that the Magistrate Judge for the Kentucky case has advised the parties that the case will be tried before the end of 2005. [Kressin Dec. at ¶ 6.] In contrast, counsel for Florida Plastics and LSI indicates that Magistrate Judge Wehrman did not state that the Kentucky case will go to trial by the end of the year. Instead, Judge Wehrman simply stated that the parties should not be surprised if the court entered a scheduling order that would set the Kentucky case for trial before the end of the year. As of the last filing in the instant case, no scheduling order has been entered by the court in the Kentucky case. [*Id.* at ¶ 4.]

*3 For purposes of the pending motion, the parties have stipulated that the design and construction of the menu boards and/or menu panels made, offered for sale and/or sold by Florida Plastics are deemed to be different than the design and construction of the menu boards and/or menu panels made, offered for sale and/or sold by LSI Industries, Inc., which are accused to infringe the patents in suit in the Kentucky case. [Kressin Dec. at ¶ 4.]

### II. Analysis

The discretionary venue transfer statute, 28 U.S.C. § 1404(a), provides as follows:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

This Court has broad discretion in considering a motion to transfer under § 1404(a).*Ellipsis, Inc. v. Colorworks, Inc.,* 329 F.Supp.2d 962, 970 (W.D.Tenn.2004). The burden is on the moving party to establish the need for a change of forum. *Paragon Financial Group, Inc. v. Bradley Factor, Inc.,* 2003 WL 23471548, at *11 (E.D.Tenn.2003). The plaintiff's choice of forum will be given deference unless the defendant makes an appropriate showing. *Id.* at *12.The threshold consideration is whether the action is one which could have been brought initially in the proposed transferring district. *Returns Distribution Spec., LLC v. Playtex Prods., Inc.,* 2003

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1242067 (E.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

WL 21244142, at *6 (W.D.Tenn.2003).

In deciding whether to transfer a case because the forum is inconvenient, the Court is to consider the following factors: (1) the location of willing and unwilling witnesses; (2) the residence of the parties; (3) the location of sources of proof; and (4) the location of the events that gave rise to the dispute. *Paragon Financial Group, Inc.,* 2003 WL 23471548, at *11 (E.D.Tenn.2003). Additionally, a transfer is not appropriate if the result is simply to shift the inconvenience from one party to another. *Id.* at *12.

Finally, this Court has noted that "where 'the interest of justice' is paramount, and where the comparative convenience of the transferee and transferor forums is not significant, transfer under § 1404(a) is appropriate."*Donald v. Seamans,* 427 F.Supp. 32, 33 (E.D.Tenn.1976). The Court will therefore consider all of these factors in light of the record.

### 1. *Where the Action Could Have Been Brought*

Florida Plastics argues that the case could have been brought in the Eastern District of Kentucky where it has sold the allegedly infringing products. ImagePoint argues that the plaintiff's choice of forum should be accorded substantial weight, particularly when the plaintiff resides in the judicial district where the suit was filed. Noting that Florida Plastics is located in Illinois, ImagePoint argues that Florida Plastics has no greater connection to the Eastern District of Kentucky than to this Court.

The Court notes that plaintiff's response brief is silent on whether the instant case could have been brought in the Eastern District of Kentucky. As Florida Plastics points out, a patent infringement action may be brought in any judicial district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."28 U.S.C. § 1400(b). A corporate defendant resides in a district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Based on Florida Plastics' sale of the allegedly infringing products in the Eastern District of Kentucky, it appears that Florida Plastics is subject to personal jurisdiction in that district and this case could have been brought in that district.

### 2. *Convenience of the Parties and Witnesses*

*4 Florida Plastics contends that the Eastern District of Kentucky would be a more convenient forum for the parties. Florida Plastics notes that the owner of the patents at issue, MDI, is a Michigan corporation with witnesses and documents likely located in Michigan. Florida Plastics further argues that although ImagePoint has its corporate offices in this district, the products manufactured under the MDI patents are manufactured in Florence, Kentucky. Florida Plastics notes that it purchases the housings used in the manufacture of the allegedly infringing products from LSI, who manufactures the housings in Erlanger, Kentucky. Florida Plastics also notes that it manufactures the accused products in Chicago, Illinois. Florida Plastics also notes that LSI has agreed to indemnify Florida Plastics in the manufacture and sale of the accused products. Finally, Florida Plastics contends that potential witnesses in this action are located in the Eastern District of Kentucky, the Chicago area, the Detroit area, and Knoxville, Tennessee. Florida Plastics urges the Court to take judicial notice of the fact that the Cincinnati/Northern Kentucky International Airport is a major Delta hub with numerous flights to and from Chicago, Detroit, and Knoxville. Thus, Florida Plastics suggests that travel to the Eastern District of Kentucky will be more convenient for the parties.

ImagePoint argues that there is no more or less convenience for the inventor, MDI, if this case were handled in the Eastern District of Kentucky versus the present district. ImagePoint also argues that the location of any products it manufactures is irrelevant inasmuch as ImagePoint is not accused of patent infringement. ImagePoint contends that even if the housings for the accused products are manufactured in Kentucky, the ultimate allegedly infringing product is manufactured in Illinois. Thus, the Eastern District of Kentucky is no more convenient a forum than this Court. With respect to LSI's indemnification of Florida Plastics, ImagePoint argues that LSI accepted the risk that it could be called to indemnify Florida Plastics in any jurisdiction in the country. Thus, Florida Plastics cannot claim to be inconvenienced by litigating in this district. ImagePoint further contends that Florida Plastics' argument on the convenience of potential LSI employees is merely an attempt to shift the inconvenience to the plaintiff whose employees and officers would be inconvenienced by traveling to a trial in the Eastern District of Kentucky. Finally, ImagePoint urges the Court to take notice of the fact that Knoxville has a modern airport with several daily flights to Chicago, Detroit, and the Cincinnati/Northern Kentucky areas.

©  2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1242067 (E.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

The Court declines the invitation to decide the pending motion on the merits of the respective airports in Knoxville and Cincinnati/Northern Kentucky. It appears that the present forum would be more convenient for ImagePoint, not surprisingly, inasmuch as the company's corporate offices are located in Knoxville. It further appears that the present forum is less convenient to Florida Plastics and MDI, whose respective offices are in Michigan and Illinois. For that reason, the Eastern District of Kentucky would seem to be equally inconvenient inasmuch as either forum will require the transportation of witnesses and documents from Michigan and Illinois. It appears that the Eastern District of Kentucky would be a more convenient forum for non-party LSI, who has a facility in Erlanger, Kentucky. The Court does not find that the convenience of a non-party should outweigh the convenience to the present parties. Upon consideration of the facts, it does not appear that the Eastern District of Kentucky is necessarily more convenient to the parties than the present forum. Therefore, this factor does not weigh in favor of transfer.

### 3. The Interests of Justice

*5 Florida Plastics vigorously argues that the "interest of justice" factor is the paramount reason to **transfer** this case to the Eastern District of Kentucky, specifically due to the pending case there. Florida Plastics contends that the pending litigation is a strong factor to be weighed in the interest of judicial economy. Florida Plastics notes that this case and the Kentucky case involve overlapping issues of law and fact as they involve, or will involve, all of the **samepatents**. The cases involve similar products and will involve many of the same witnesses. Florida Plastics also notes that both cases will require the court to construe the claims of the MDI patents, both cases will require the court to determine the validity of the patents, both cases will require the court to apply the claims of the construed patents to the accused products, and both courts may be required to make determinations on damages. Florida Plastics contends that the two cases are in substantially the same procedural posture inasmuch as the Kentucky case has been stayed for much of the time it has been pending. Finally, Florida Plastics raises the possibility that the two cases, proceeding separately, could result in conflicting or inconsistent decisions.

ImagePoint argues that Florida Plastics has presented no proof to show that pretrial discovery could be conducted more efficiently, that witnesses could be saved time and money, or that duplicitous litigation would be avoided by transferring this case to the Eastern District of Kentucky. ImagePoint also contends that the actions are not in a similar posture since the Kentucky case will likely reach a trial on the merits before the end of this year, whereas the present case has had very little discovery conducted and will not be ready for trial by the end of this year. ImagePoint also argues that the rulings of the respective courts could be binding on the other, thus eliminating the possibility of inconsistent results.

It is undisputed that both pending cases involve three of the five MDI patents and it is anticipated that the Kentucky case will be amended to include the remaining two patents. The parties are not identical inasmuch as LSI is not a party to the instant case and Florida Plastics is not a party to the Kentucky case. However, it cannot be disputed that the cases involve similar claims and issues and will likely involve many of the same witnesses and exhibits. If the cases remain in their current venues, there is a very real possibility that the courts may reach different conclusions on claim construction, patent validity, or infringement. On balance, the Court concludes that the pending related case in the Eastern District of Kentucky provides a powerful reason to grant the pending motion. Transferring the present case to the Eastern District of Kentucky will allow that court to consider consolidation of the two cases, conserve judicial resources and the resources of the parties, and ensure consistent rulings. Therefore, the Court concludes that the motion to transfer should be granted.

### III. Conclusion

*6 For all the reasons set forth above, the Court will GRANT the defendant's motion to transfer [Doc. 23] and the present case will be transferred to the United States District Court for the Eastern District of Kentucky, Covington Division.

Order accordingly.

E.D.Tenn.,2005.
ImagePoint Inc. v. Keyser Industries, Inc.
Not Reported in F.Supp.2d, 2005 WL 1242067 (E.D.Tenn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 5

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2007 WL 1101228 (D.N.J.)
**(Cite as: Slip Copy)**

C

Aventis Pharma S.A. v. Sandoz Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.NOT
FOR PUBLICATION
United States District Court,D. New Jersey.
AVENTIS PHARMA S.A., et al., Plaintiffs,
v.
SANDOZ INC., Defendant.
**Civil Action No. 06-3671 (MLC).**

April 10, 2007.

Liza M. Walsh, Agnieszka Antonian, Connell Foley,
LLP, Roseland, NJ, for Plaintiffs.
Eric I. Abraham, Hill Wallack, LLP, Princeton, NJ,
for Defendant.

### MEMORANDUM OPINION

COOPER, District Judge.

*1 Plaintiffs, Aventis Pharma S.A. and Aventis
Pharmaceuticals Inc. (collectively "Aventis"),
move to voluntarily dismiss the complaint pursuant to
Federal Rule of Civil Procedure ("Rule") 41(a)(2), or
in the alternative, to transfer the action to the United
States District Court for the Central District of
California pursuant to 28 U.S.C. § 1404(a)
("Section 1404"). (Dkt. entry no. 17.) The defendant,
Sandoz Inc. ("Sandoz"), cross-moves to dismiss the
action and for costs and attorneys fees. (Dkt. entry no.
18.) For the reasons stated herein, the Court will (1)
grant the part of the motion seeking to transfer the
action to the Central District of California, (2) deny
the part of the motion seeking to voluntarily dismiss
the complaint pursuant to Rule 41(a)(2), and (3) deny
the cross-motion.

### BACKGROUND

Aventis develops, manufactures, and sells
pharmaceutical products. (Compl., at ¶ 2.) Aventis
Pharmaceuticals Inc. is incorporated in Delaware and
its principal place of business is in Bridgewater, New
Jersey. (Id. at ¶ 1.) Aventis Pharma S.A. is a French
corporation and its principal place of business is in
France. (Id .) Aventis holds the patent claiming the
drug product marketed under the trade name Lovenox
(" 743 patent").(Id. at ¶ 8.) The 743 patent will
expire on February 14, 2012. (Id. at ¶ A.)

Sandoz develops, manufactures, distributes, and sells
generic pharmaceutical products. (Ans., at ¶ 3.)
Sandoz is incorporated in Colorado and its principal
place of business is in Princeton, New Jersey. (Id.)
Sandoz filed with the Federal Drug Administration
("FDA") an Abbreviated New Drug Application
("ANDA") for the "commercial manufacture, use,
and sale of enoxaparin sodium" in certain dosage
forms. (Id. at ¶ 10.)

Aventis alleges Sandoz's submission of the ANDA to
obtain FDA approval before the expiration of the
743 patent constitutes infringement under 35 U.S.C.
§ 271(e)(2)(A). (Compl., at ¶ 12.) Aventis seeks a
judgment (1) prohibiting the approval of Sandoz's
ANDA before the date of expiration of the 743
patent, and (2) enjoining Sandoz from "the
commercial manufacture, offer to sell, sale, or
importation of its enoxaparin sodium product."(Id. at
¶ ¶ A-B.) Sandoz asserts a counterclaim seeking a
judgment stating that (1) Sandoz has not infringed the
743 patent, (2) the 743 patent is invalid, and (3) the
743 patent is unenforceable because of Aventis's
inequitable conduct. (Ans., at 19.)

Aventis filed complaints raising identical claims of
patent infringement against Sandoz in both the
District of New Jersey and Central District of
California ("California action") on August 4, 2006.
(Dkt. entry no. 1; see Central District of California
Civ. Dkt. for No. 06-4858, dkt. entry no. 1.) Sandoz
filed a motion in California to strike the complaint or
in the alternative to transfer the action to New Jersey.
(Id., dkt. entry no. 13.) The Judge presiding over the
California action denied the motion to transfer.(Id.,
dkt. entry no. 43.) Sandoz asserted counterclaims in
the California action that are identical to the three
counterclaims asserted in New Jersey, as well as
additional counterclaims. (Id., dkt. entry no. 44.) The
Judge presiding over the California action granted
Sandoz leave to file a motion for summary judgment
on or before April 6, 2007. (Id., dkt. entry no. 49.)

### DISCUSSION

*2 Aventis argues that transfer of the action is
appropriate because (1) the matter has already been
brought in the Central District of California, and (2)
the private and public interests favor transfer. (Pl. Br.,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

at 12.) Sandoz argues that the complaint should instead be dismissed with prejudice and Sandoz should be awarded costs and attorneys fees because (1) Aventis's filing of duplicative litigation and "Judge-Shopping" should not be condoned, and (2) the complaint is redundant and should be stricken under Rule 12(f), and (3) transferring the action "would be a breach of Aventis's promise to the California court to dismiss this Complaint."(Def. Br., at i, 13.)

## I. Transfer Standard

Section 1404 provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."28 U.S.C § 1404. An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the parties. _Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir.1970)._ In a civil action based on federal question jurisdiction, venue can be laid in a judicial district (1) in which the defendants reside, if all defendants reside in the same state, (2) where a substantial part of the events or omissions giving rise to the claim occurred, or (3) where any defendant may be found if there is no district in which the action otherwise might be brought. 28 U.S.C. § 1391(b). A corporation is considered to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c).

The movant bears the burden of demonstrating that the alternative forum is more appropriate than the present one. _Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995)._ Courts balance various private and public interests when deciding whether to transfer pursuant to Section 1404._Jumara, 55 F.3d at 879._ The private interests may include plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, the possibility of a jury view of the premises, the location of books and records to the extent they may be unavailable in one forum, and whether the claim arose elsewhere. _See Gulf Oil v. Gilbert, 330 U.S. 501, 508 (1946); Jumara, 55 F.3d at 879._ The public interests may include enforceability of the judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court

congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law. _Jumara, 55 F.3d at 879-80._[FN1]

> FN1. Plaintiffs may move to transfer venue. _See Ferens v. John Deere Co., 494 U.S. 516, 530-31 (1990)_ (suggesting same).

## II. Transfer as Applied to this Case

*3 Transfer of this action to the Central District of California is appropriate. As a threshold issue, the Court concludes that Aventis could have brought this matter in the transferee court. _See CIBC World Markets, Inc. v. Deutsch Bank Sec., Inc., 309 F.Supp.2d 637, 644 (D.N.J.2004)._ This action was simultaneously brought in California because the Central District of California is a proper venue, and it can, and already has exercised jurisdiction over Sandoz and denied its motion to transfer the action to New Jersey. _(See dkt. entry no. 18, Ex. 5, Tr. of 11-13-06 Motion Hearing.)_

"Although the Court must weigh the factors present in § 1404(a), a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and should not be lightly disturbed."_APV N. A., Inc. v. Sig Simonazzi N. A., Inc., 295 F.Supp.2d 393, 398 (D.Del.2002)._ Thus, plaintiffs' choice of forum will prevail even where the factors are evenly balanced or only weigh slightly in favor of transfer, and will only be disturbed where the "balance of convenience of the parties is strongly in favor of the defendant."_Id._ Although plaintiffs here filed complaints in both New Jersey and California, California is their preferred forum. _(See Pl. Br., at 12; dkt. entry no. 18, Ex. 5, Tr. of 11-13-06 Motion Hearing.)_ The Court finds, for the reasons that follow, that the balance of factors weigh in favor of transfer and therefore will defer to plaintiffs' choice of forum.

The Court concludes that judicial economy mandates **transfer** of the action to California. "[T]he interests of judicial economy dictate that an action involving the **samepatents**-in-suit and most of the same parties should not proceed simultaneously in two different district courts."_Air Prod. & Chem., Inc. v. MG Nitrogen Servs., Inc., 133 F.Supp.2d 354, 357 (D.Del.2001); see also St. Hill v. Gonzales, No. 04-4191, 2007 WL 934651, at *3 (3d Cir. Mar. 29, 2007)_ (transferring appeal on grounds of "judicial economy" where appeal by same plaintiff in another circuit raised "**parallelissues**," and other circuit had

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

already accepted review). Both parties admit that the California action is identical to the instant action, and is currently pending and moving forward. (Pl. Br., at 2; Def. Br., at 2.) The Judge overseeing the California action has denied Sandoz's motion to **transfer** the California action to this Court on the basis of judicial economy. (Tr. of 11-13-06 Motion Hearing.) Thus, consideration of judicial economy warrants **transfer**.

The existence of a separate earlier pending action in the Central District of California involving the **samepatent** at issue in this action also warrants **transfer** on the basis of judicial economy. The "existence of a prior related action in the transferee district is a strong factor weighing in favor of **transfer** in the interest of judicial economy."*Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson,* No. 99-3508, 1999 WL 592399, at *4 (E.D.Pa. Aug. 5, 1999). The Judge assigned to the California action is also assigned to *Aventis v. Amphastar* ("Amphastar action"), EDCV-03-887, which involves the **samepatent** at issue in the instant action and the California action. (Declaration of Agnes Antonian ("Antonian Decl."), at Exs. H & I; Pl. Br., at 1.) Trial occurred in the *Amphastar* action in December of 2006. *(See* Central District of California Civ. Dkt. for No. 03-887, dkt. entry nos. 893-99.)The California action and this action involve the **samepatent** and defense of invalidity and unenforceability at issue in the *Amphastar* action, and therefore the existence of this prior related action in California also favors **transfer**. (Pl. Br., at 3.)

*4 The Court finds the private and public interest factors favor transfer. The ongoing litigation of virtually identical claims and counterclaims in California is certainly a "practical consideration[ ] that could make the trial expeditious or inexpensive."*Jumara,* 55 F.3d at 880. The practical considerations weighing in favor of transfer are further indicated by the focus of the parties' arguments to this Court on whether the complaint should be dismissed with or without prejudice, not whether the action should be transferred to California.

Convenience of the witnesses and parties, and the location of documentary evidence, are considerations favoring transfer. Requiring the witnesses, as well as the parties, to appear in two separate actions will not be convenient. (Pl. Br., at 13.) The similarity in issues between the *Amphastar* action and the current action may also avoid duplication of labor by the parties and both Courts that would arise from failing

to transfer this action. (Pl. Reply Br., at 4.) Thus, these convenience factors weigh in favor of transfer.

Any interest New Jersey has in the litigation is outweighed by the interests in judicial economy outlined by the Court. Sandoz admits that it "has no intention of attempting to run around the California court's ruling by moving forward before this Court on the merits of its counterclaims" but nonetheless argues that the complaint should be dismissed with prejudice and its counterclaims stayed while the California action is proceeding. (Def. Br., at 14.) Such an argument flies in the face of the interests in judicial economy advanced by § 1404, and Sandoz's arguments that such a remedy is necessary to "safeguard Sandoz from any future procedural gamesmanship on the part of Aventis" is merely speculative.

The parties' arguments as to whether Aventis filed first in New Jersey are irrelevant to the Court's analysis because the Court has found the balance of all the interests favors transfer in this case. *(See* Def. Br., at 3; Pl. Reply Br., at 3.) "The first-filed action is preferred ... unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise. Thus, the trial court's discretion tempers the preference for the first-filed suit, when such preference should yield to the forum in which all interests are best served."*Serco Servs. Co. v. Kelley Co.,* 51 F.3d 1037, 1039 (Fed.Cir.1995) (internal cite omitted); *see also Ricoh Co. LTD v. Honeywell, Inc.,* 817 F.Supp. 473, 487 (D.N.J.1993) (departing from first-filed rule because the subsequent forum was more convenient, and the location of witnesses and documents). Here, even if Sandoz was correct in arguing that Aventis filed in New Jersey first or at the same time as California, departure from the first-filed rule is appropriate because the Court's balancing of the interests favors transfer.

There is no indication that Aventis filed the complaint in this district for any improper purpose or motive, or that it engaged in forum-shopping. Any assertions by Sandoz to the contrary are mere conjecture and not supported by the record. The Court finds Aventis's explanation that it filed a virtually identical complaint in New Jersey after filing in California "in case Sandoz contested in personam jurisdiction in California and to preserve its rights to a 30-month stay of FDA approval of Sandoz's application" sufficiently refutes any allegation of judge or forum shopping by Sandoz. Accordingly, transfer, rather than dismissal, will

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4
Slip Copy, 2007 WL 1101228 (D.N.J.)
**(Cite as: Slip Copy)**

expedite the resolution of Aventis's claims by
eliminating the confusion and delays associated with
having two identical actions litigated in California
and New Jersey.[FN2]

> FN2. Dismissal of the complaint without
> prejudice pursuant to Rule 41(a)(2),
> requested by plaintiffs, is also not an
> available remedy because the Court here
> will    not    independently    adjudicate
> defendant's counterclaims. *See* Fed.R.Civ.P.
> 41(a)(2) ("an action shall not be dismissed
> against the defendant's objection unless the
> counterclaim can remain pending for
> independent adjudication by the court").

## CONCLUSION

**\*5** The Court, for the reasons stated *supra,* will grant
the part of the motion seeking transfer of the action to
the Central District of California. The remaining
matters are all denied without prejudice. The Court
will issue an appropriate order and judgment.

D.N.J.,2007.
Aventis Pharma S.A. v. Sandoz Inc.
Slip Copy, 2007 WL 1101228 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.